**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**June 3, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **D.A., J.R.-1, D.R., and J.A.**

**No. 20-0986** (Kanawha County 20-JA-89, 20-JA-90, 20-JA-92, and 20-JA-94)

**MEMORANDUM DECISION**

Petitioner Mother J.R.-2, by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's November 6, 2020, order terminating her parental rights to D.A., J.R.-1, D.R., and J.A.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Elizabeth G. Kavitz, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her a post-adjudicatory improvement period and in terminating her parental rights rather than imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2020, the DHHR filed a child abuse and neglect petition alleging that petitioner had exposed the children to domestic violence in the home. The DHHR further alleged that petitioner's husband verbally abused the children by calling them derogatory names and threatening to abuse them. The DHHR interviewed D.R. and J.A. who both disclosed that the husband "slammed" another child in the home against a bed hard enough to break the box

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, as one of the children and petitioner share the same initials, we refer to them as J.R.-1 and J.R.-2, respectively, throughout this memorandum decision.

springs of the bed.[2] Finally, the DHHR alleged that petitioner had a history of heroin use. Petitioner denied using heroin during an interview with a DHHR worker in February of 2020 but admitted to using marijuana. Petitioner also admitted that her husband had been abusive to her and the children. Later in March of 2020, the circuit court held a preliminary hearing and ratified the DHHR's removal of the children from petitioner's care. The circuit court ordered petitioner to participate in random drug screening, parenting and adult life skills classes, and a forensic psychological evaluation. The circuit court also noted that the husband had filed a domestic violence protective order against petitioner, and a no contact order was issued as a result. The circuit court re-emphasized that order and explained to the parties that the order continued to be in effect. Petitioner was drug screened immediately following the hearing and tested positive for the marijuana metabolite tetrahydrocannabinol ("THC") and fentanyl.

The circuit court convened for the adjudicatory hearing in July of 2020.[3] Petitioner stipulated to the allegations that domestic violence had affected her ability to parent, that the violence had occurred in the presence of the children, and that she had failed to protect the children from domestic violence. Accordingly, the circuit court adjudicated her as an abusing parent. Petitioner moved for a post-adjudicatory improvement period, which the circuit court held in abeyance. However, the court also ordered petitioner to participate in domestic violence education and outpatient substance abuse treatment, as well as the parenting classes, random drug screening, and a psychological evaluation that had been previously ordered. The circuit court continued the no contact order between petitioner and the husband. Finally, the circuit court ordered the parties to submit to drug screening following the hearing, and petitioner tested positive for THC and fentanyl.

The circuit court held the final dispositional hearing in October of 2020. The DHHR recommended that the circuit court terminate petitioner's parental rights. In support, a Child Protective Services ("CPS") supervisor testified that petitioner had failed to participate in services. The supervisor testified that petitioner had failed to participate in parenting and adult life skills classes and that the provider of those services was never able to contact petitioner. The supervisor further testified that petitioner had failed to participate in random drug screening. She explained that petitioner alleged that she was participating in a drug treatment program where she was screened for controlled substances, but petitioner had not provided any evidence from this program to the DHHR. The supervisor further explained that the DHHR had prepared multiple time-sensitive "drug packets," which were required for petitioner to enroll in drug screening, and petitioner had failed to pick up those materials. The supervisor testified that petitioner had not visited with the children due to her lack of compliance with random drug screening. Moreover, the supervisor stated that petitioner "did not really show any remorse"

---

[2]The DHHR's petition included two of the husband's children as infant respondents who lived in the home with petitioner and the husband. These children are not petitioner's biological children and are not at issue in this appeal.

[3]The COVID-19 pandemic and resulting judicial emergency caused an unavoidable delay in the proceedings.

about not visiting with the children during the multidisciplinary treatment team meeting. The supervisor testified that petitioner missed her psychological evaluation appointment initially, but she availed herself of that evaluation in October of 2020, just two weeks before the dispositional hearing. Finally, the supervisor testified that, despite the circuit court's no contact order, petitioner went on a vacation with the husband in June of 2020.

Petitioner testified that she had had no contact with the husband since July of 2020, but admitted to traveling to Tennessee with him that month. She testified that she had participated in parenting classes over the phone with a service provider. However, petitioner lost her prior phone number and had no contact with the provider after she obtained a new phone number, although she asserted that she sent the provider several text messages from her new phone number. Petitioner also explained that she was participating in a drug counseling program and submitting to drug screening at that program. She stated that she completed that program, and, although she insisted that she provided her counsel with documentary evidence to prove her participation in and completion of that program, no supporting documents were offered as evidence. When confronted with her positive drug screening result from the July of 2020 adjudicatory hearing, petitioner admitted that she "ran into somebody that smoked a joint with [her]" and speculated that the marijuana was laced with fentanyl. She otherwise denied fentanyl use. Petitioner also testified that she would have participated in random drug screening, but she did not have transportation to the drug screening facility, and the DHHR had not assisted her with transportation.

Ultimately, the circuit court found that petitioner failed to participate in the DHHR's reasonable efforts to reunify the family. Based on petitioner's nonparticipation, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. Accordingly, the circuit court denied petitioner's motion for a post-adjudicatory improvement period and terminated her parental rights to the children. The circuit court's decision was memorialized by its November 6, 2020, order. Petitioner now appeals this order.[4]

The Court has previously held:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when,

---

[4]The parental rights of the children's respective fathers have been terminated, with the exception of D.A., who has been returned to her father's custody. According to the parties, the other siblings have been separated, which the circuit court approved. The permanency plan for D.R. and J.R.-1 is adoption in their current relative foster placement. The permanency plan for J.A. is subsidized legal guardianship, per his wishes.

although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred by terminating her parental rights without first granting her a post-adjudicatory improvement period. Petitioner acknowledges that, under West Virginia Code § 49-4-610, she had the burden to prove that she was likely to fully participate in an improvement period. She cites to her own testimony that she participated in a drug treatment program, met briefly with a service provider, and missed her first psychological evaluation due to a "really bad headache" that she believed to be related to COVID-19. She further asserts that she attempted to gain employment throughout the proceedings. Finally, petitioner notes that the circuit court terminated her parental rights prior to receiving the results of her psychological evaluation and argues that, had the circuit court delayed ruling until the report was completed, adequate services could have been provided to her to regain custody of her children. We find no merit to petitioner's argument.

As referenced, West Virginia Code § 49-4-610(2)(B), which governs post-adjudicatory improvement periods, requires the parent to "demonstrate[], by clear and convincing evidence, that [they are] likely to fully participate in the improvement period." Further, it is well established that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015); *see also In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) (holding that a circuit court has the discretion to deny a motion for an improvement period when no improvement is likely).

Here, petitioner failed to demonstrate that she was likely to fully participate in an improvement period. The DHHR presented evidence at the dispositional hearing that petitioner failed to participate in the services it had provided to reunify the family. The circuit court ordered petitioner to participate in random drug screening as well as parenting and adult life skills classes at the preliminary hearing. However, she did not submit to a single random drug screen and tested positive for THC and fentanyl immediately following the preliminary and adjudicatory hearings. Further, the CPS supervisor testified that petitioner had not participated in parenting and adult life skills classes as the service provider had been unable to reach her. Although petitioner offered contradictory testimony in regard to these classes, the circuit court determined the CPS supervisor's testimony to be credible, and "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Finally, in regard to petitioner's specific attack that the circuit court was too hasty in denying her motion for an improvement period prior to the receipt of her psychological evaluation, we find

her argument that services may have been identified for her to achieve adequate parenting to be unpersuasive. Petitioner did not participate in the above-mentioned services, and petitioner makes no argument as to why she would have been more likely to participate following the completion of her evaluation. Based on petitioner's failure to participate in court-ordered services, we find the circuit court did not err in denying her motion for a post-adjudicatory improvement period.

In petitioner's second assignment of error, she argues that the circuit court erred in terminating her parental rights to D.A., because that child was placed with her biological father. She avers that the circuit court should have dismissed D.A. as that would be the least restrictive dispositional alternative. We disagree. West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the welfare of the children. West Virginia Code § 49-4-604(d) sets forth that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future when the parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Notably, West Virginia Code provides that such conditions exist when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

W. Va. Code § 49-4-604(d)(3). Furthermore, this Court has held that West Virginia Code § 49-4-604 "permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id*.

Here, petitioner failed to follow through with the services offered by the DHHR to reduce or prevent the abuse and neglect of the children. The circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect because she would not avail herself of these services. Petitioner does not challenge that finding on appeal, and, upon our review, we find no error in that finding. We have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because the record fully supports the requisite findings, we find no error in the circuit court's termination of petitioner's parental rights to D.A., rather than the imposition of a less-restrictive dispositional alternative.

Finally, although petitioner does not directly challenge the termination of her parental rights to J.R.-1, D.R., and J.A., we nevertheless find that the circuit court did not err in its decision. As previously discussed, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future, and petitioner does not challenge that finding. Accordingly, the circuit court was within its discretion to terminate petitioner's parental rights, and we find no error in its decision.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 6, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 3, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton